Michael K. Brown (SBN 104252)
Mildred Segura (SBN 210850)
Michelle L. Cheng (SBN 239711)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
mkbrown@reedsmith.com
msegura@reedsmith.com
mcheng@reedsmith.com
Telephone:  213.457.8000
Facsimile:  213.457.8080

James Dowden (*admitted Pro Hac Vice*)
Emily J. Derr (*admitted Pro Hac Vice*)
ROPES & GRAY LLP
800 Boylston Street, Prudential Tower
Boston, MA  02199-3600
James.Dowden@ropesgray.com
Emily.Derr@ropesgray.com
Telephone:  617.951.7000
Facsimile:   617.951.7050

Laura G. Hoey (*admitted Pro Hac Vice*)
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL  60606
Laura.Hoey@ropesgray.com
Telephone:  312.845.1318
Facsimile:   312.845.5562

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, et al., *ex rel*. The Dan Abrams Company LLC,<br><br>                   Plaintiffs,<br><br>          vs.<br><br>Medtronic Inc., Medtronic Plc., Medtronic Sofamor Danek USA Inc., Warsaw Orthopedic Inc., Medtronic Sofamor Danek Deggendorf Gmbh and Medtronic Puerto Rico Operations Co., Humacao,<br><br>                   Defendants. | No.: 2:15-cv-01212-JAK (ASx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:        February 13, 2017<br>Time:       8:30 a.m.<br>Place:       Courtroom 750<br><br>Honorable John A. Kronstadt<br><br>[Filed concurrently with: Notice of Motion to Dismiss; Request for Judicial Notice; Notice of Lodging] |

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................2

    I.     FACTUAL AND PROCEDURAL BACKGROUND ............................2

        A.    Medtronic and the Verte-Stack Brand ..............................2

        B.    The FDA's Regulation of Spinal Cages ..........................4

        C.    Procedural Background......................................................5

    II.    STATUTORY BACKGROUND.........................................................6

        A.    The Food, Drug, and Cosmetic Act .................................6

        B.    Government Coverage and Reimbursement......................6

ARGUMENT .......................................................................................................8

    I.     The Complaint Fails to State a Claim That Medtronic Caused
        False Claims for Verte-Stack. .........................................................9

        A.    Relator Fails to Plausibly Allege Any False Claims
            Because Verte-Stack Devices Were Not Categorically
            Ineligible for Reimbursement. .........................................9

        B.    Verte-Stack Claims Could Not Have Been Materially
            False Because the Devices Are Reimbursed Based on
            Diagnosis-Related Groups. ..............................................13

        C.    The Complaint Fails to Plead the Verte-Stack Allegations
            with the Particularity Required Under Rule 9(b)............15

        D.    Relator's Claims Based on the Verte-Stack Allegations
            Are Barred by the FCA's Statute of Limitations............17

    II.    Relator's Kickback-Based FCA Claims Must Be Dismissed
        Because They Are Not Supported by Plausible or Specific
        Factual Allegations........................................................................18

        A.    Relator Fails to Plead a Cognizable FCA Claim Based on
            Violations of the Anti-Kickback Statute, and Certainly
            Not With the Specificity Required by Rule 9(b). ...........19

        B.    Relator's Conclusory Allegations Concerning
            Medtronic's Marketing Programs Must Be Dismissed
            Under Rule 12(b)(6) and the FCA's Public Disclosure
            Bar..................................................................................21

III.    The Complaint Fails to Plead Particular Conduct By Each
        Defendant. ..................................................................................22

IV.     The Complaint Does Not Plead Any Facts to Support Counts 3
        and 4, and They Must Be Dismissed. ........................................23

V.      Relator's State Law Claims Fail As a Matter of Law. ...............24

VI.     The Court Should Dismiss Relator's Claims With Prejudice. .................24

CONCLUSION ..........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States ex rel. Alfatooni v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) ................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 8, 9, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................. 2, 8, 23

*United States ex rel. Bennett v. Boston Scientific Corp.*,
  No. H-07-2467, 2011 WL 1231577 (S.D. Tex. Mar. 31, 2011) ............................ 13

*United States ex rel. Bennett v. Medtronic, Inc.*,
  747 F. Supp. 2d 745 (S.D. Tex. 2010) .................................................... 10

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) .................................................................. 6, 12

*United States ex rel. Cafasso v. Gen. Dynamics C4 Systems, Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ........................................................... 15

*Carson v. DePuy Spine, Inc.*,
  365 F. App'x 812 (9th Cir. 2010) (unpublished) ......................................... 10

*United States ex rel. D'Agostino v. EV3, Inc.*,
  153 F. Supp. 3d 519 (D. Mass. 2015) .................................................... 12

*Destifino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ............................................................ 22

*Detgen ex rel. Detgen v. Janek*,
  752 F.3d 627 (5th Cir. 2014) ............................................................. 8

*United States ex rel. Digiovanni v. St. Joseph's/Candler Health Sys., Inc.*,
  No. CV404-190, 2008 WL 395012 (S.D. Ga. Feb. 8, 2008) ............................... 15

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) .......................................................*passim*

*United States ex rel. Franklin v. Parke-Davis*,
147 F. Supp. 2d 39 (D. Mass. 2001)......................................................................20

*Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
559 U.S. 280 (2010)...............................................................................................21

*Hanlester Network v. Shalala*,
51 F.3d 1390 (9th Cir. 1995)..................................................................................21

*United States ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) ...............................................................................13

*United States ex rel. Hopper v. Anton*,
91 F.3d 1261 (9th Cir. 1996) ...................................................................................8

*United States ex rel. Hyatt v. Northrop Corp.*,
91 F.3d 1211 (9th Cir. 1996) .................................................................................17

*Johnson v. Buckley*,
356 F.3d 1067 (9th Cir. 2004) ...............................................................................25

*United States ex rel. Keeler v. Eisai, Inc.*,
568 F. App'x 783 (11th Cir. 2014).........................................................................20

*United States ex rel. Kelly v. Serco, Inc.*,
No. 11cv2975, 2014 WL 4988462 (S.D. Cal. Oct. 6, 2014) ...................................23

*United States ex rel. Kennedy v. Aventis Pharm., Inc.*,
No. 03C2750, 2008 WL 5211021 (N.D. Ill. Dec. 10, 2008)....................................15

*United States ex rel. Lee v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) .................................................................................22

*United States ex rel. Marion v. Heald Coll., LLC*,
No. 5:12-CV-02067, 2015 WL 4512843 (N.D. Cal. July 24, 2015).......................23

*United States ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016) .................................................................................21

*United States ex rel. Modglin v. DJO Glob. Inc.*,
48 F. Supp. 3d 1362 (C.D. Cal. 2014)...........................................................*passim*

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ................................................................. 22

*United States ex rel. Nowak v. Medtronic, Inc.*,
  806 F. Supp. 2d 310 (D. Mass. 2011) ............................................... *passim*

*United States ex rel. Perry v. Hooker Creek Asphalt & Paving, LLC*,
  565 F. App'x 669 (9th Cir. 2014) ................................................ 8, 15, 20

*PhRMA v. Walsh*,
  538 U.S. 644 (2003) ............................................................................... 8

*United States ex rel. Rost v. Pfizer Inc.*,
  507 F.3d 720 (1st Cir. 2007) ................................................................ 10

*United States ex rel. Roster v. Bristol-Myers Squibb Co.*,
  587 F. Supp. 2d 805 (E.D. Tex. 2008) ................................................. 20

*Sarmiento v. Bank of N.Y. Mellon*,
  No. CIV. 10-00349, 2011 WL 884457 (D. Haw. Mar. 10, 2011) ........... 22

*United States ex rel. Stephens v. Tissue Science Labs., Inc.*,
  664 F. Supp. 2d 1310 (N.D. Ga. 2009) ................................................ 15

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
  -- F.3d ---, 2016 WL 4205941 (9th Cir. Aug. 10, 2016) ................... 15, 22

*United States v. Caronia*,
  703 F.3d 149 (2d Cir. 2012) ................................................................ 10

*United States v. Ctr. for Diagnostic Imaging*,
  787 F. Supp. 2d 1213 (W.D. Wash. 2011) ........................................... 19

*United States v. Murphy*,
  937 F.2d 1032 (6th Cir. 1991) ............................................................. 23

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................. 3

*United States v. Rivera*,
  55 F.3d 703 (1st Cir. 1995) .................................................................. 17

*United States v. Shasta Servs. Inc.*,
  440 F. Supp. 2d 1108 (E.D. Cal. 2006) ............................................... 24

– v –

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
--- U.S. ---, 136 S. Ct. 1989 (2016) ..........................................................8, 9, 13, 17

*Vess v. Ciba-Geiby Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ................................................................... 19

*United States ex rel. Wagemann v. Doctor's Hosp. of Slidell*,
No. 09-3506, 2010 WL 3168087 (E.D. La. Aug. 6, 2010) ..................................... 15

*United States ex rel. Zemplenyi v. Grp. Health Coop.*,
No. C09-603, 2011 WL 814261 (W.D. Wash. Mar. 3, 2011) ................................. 15

**Statutes**

21 U.S.C. § 331 .................................................................................. 10

21 U.S.C. § 332 .............................................................................. 11, 12

21 U.S.C. § 334 .................................................................................. 11

21 U.S.C. § 337 .................................................................................... 6

21 U.S.C. § 352 .................................................................................. 10

21 U.S.C. § 360 .................................................................................. 11

21 U.S.C. § 360c .......................................................................... 4, 6, 11

21 U.S.C. § 360e ............................................................................... 4, 6

21 U.S.C. § 396 .................................................................................... 6

31 U.S.C. § 3729 .......................................................................... *passim*

31 U.S.C. § 3730 ..................................................................... 21, 22, 24

31 U.S.C. § 3731 ............................................................................. 2, 17

42 U.S.C. § 1320a-7b ...................................................................... 18, 19

42 U.S.C. § 1395ww ............................................................................ 14

42 U.S.C. § 1395y ................................................................................. 7

Md. Code, Health – General, § 2-604 ......................................................... 24

**Other Authorities**

5 C.F.R. § 890.904 ...................................................................................... 14

21 C.F.R. pt. 814 ............................................................................................. 4

21 C.F.R. § 888.3060 ...................................................................................... 4

21 C.F.R. § 888.3080 ................................................................................. 4, 18

32 C.F.R. § 199.14 ........................................................................................ 14

38 C.F.R. § 17.270 ........................................................................................ 14

42 C.F.R. § 405.201 ...................................................................................... 13

42 C.F.R. § 412.2 .......................................................................................... 14

42 C.F.R. § 412.60 ........................................................................................ 14

42 C.F.R. § 419.2 .......................................................................................... 14

42 C.F.R. § 419.31 ........................................................................................ 14

42 C.F.R. § 440.230 ........................................................................................ 7

60 Fed. Reg. 48,417 (Sept. 19, 1995) ..................................................... 7, 13

60 Fed. Reg. 48,420 (Sept. 19, 1995) ........................................................... 7

Fed. R. Civ. P. 8 ...................................................................................... 17, 21

Fed. R. Civ. P. 9 ................................................................................... *passim*

Fed. R. Civ. P. 12 .................................................................................... 21, 24

CMS, Medicare-Diagnosis Related Group Codes (2008),
  Nos. 453-460, 471-73 .............................................................................. 14

FDA Medical Devices Advisory Committee, Orthopedic and
  Rehabilitation Devices Panel, Transcript of Open Session
  (Dec. 11, 2003) ........................................................................................ 3, 4

Medicaid and CHIP Payment and Access Commission, Medicaid
  Inpatient Hospital Services Payment Policy (Mar. 2016) ...................... 14

Medicare Benefit Policy Manual §§ 14.10, 14.20 ..................................................... 7, 13

Medicare Program Integrity Manual § 13.5.1 ............................................................. 7

Verte-Stack Spinal System, 510(k) Summary (Mar. 14, 2007) ................................... 4

– viii –

1   Defendants Medtronic, Inc., Medtronic plc, Medtronic Sofamor Danek USA,

2   Inc., Warsaw Orthopedic, Inc., Medtronic Sofamor Danek Deggendorf GmbH, and

3   Medtronic Puerto Rico Operations Co., Humacao (collectively, "Medtronic") hereby

4   submit this Memorandum of Points and Authorities in Support of their Motion to

5   Dismiss the First Amended Complaint filed by Relator The Dan Abrams Company

6   LLC, a company consisting of exactly one member, a former Medtronic sales

7   representative named Bryan Shapiro.  Dkt. 53.

8   In a rambling and repetitive 1300-paragraph complaint, Relator appears to

9   contend that Medtronic violated the federal and analogous state False Claims Acts

10  ("FCA") by (1) engaging in "illegal human experimentation" with Verte-Stack

11  devices, (2) illegally marketing "unapproved" Verte-Stack devices, and (3) violating

12  the Anti-Kickback Statute ("AKS") by co-sponsoring marketing events.  Verte-Stack

13  devices are a family of FDA-cleared spinal implants, the first of which was cleared in

14  2002.  Dkt. 32, Am. Compl. ¶ 267.  Relator attempts to shoehorn a disparate series of

15  allegations—many of which relate to so-called "off-label use" of Verte-Stack devices

16  by physicians—into a False Claims Act cause of action.  It does not fit.  The

17  Complaint applies conclusory labels and invokes irrelevant federal regulations in an

18  effort to circumvent well-established law that off-label use of an FDA-approved or

19  cleared product by a doctor is lawful.  Neither off-label use by a physician nor the

20  manufacturer's promotion of such lawful uses can alone form the basis of FCA

21  liability.

22  For the following reasons, the Court should dismiss the First Amended

23  Complaint in its entirety and with prejudice:

24  *First*, Relator asserts that Medtronic's Verte-Stack spinal implants were

25  categorically not eligible for reimbursement by federal health care programs because

26  they were promoted and used off-label, in alleged violation of the Food, Drug, and

27  Cosmetic Act ("FDCA") (Counts 1-2).  Despite the Complaint's assertions to the

28  contrary, it is well-established that neither off-label use of a medical device, which is

– 1 –

entirely lawful, nor so-called "off-label promotion" by the manufacturer, standing alone, results in a *false* claim actionable under the FCA.  Nor can Relator point to any material falsehood, an essential element of an FCA cause of action.

*Second*, Relator's Verte-Stack allegations are barred by the FCA's six-year statute of limitations.  31 U.S.C. § 3731(b)(1).

*Third*, Relator's Anti-Kickback Statute allegations (Count 5) depend on the mistaken assumption that any payments made to a physician are *per se* illegal.  The Complaint fails to allege sufficient facts to support a plausible inference that Medtronic violated the AKS and that such violation led to a false claim.

*Fourth*, the Complaint is not pled with the specificity required to meet the heightened pleading standard of Fed. R. Civ. P. 9(b).  Relator does not allege the "who, what, where, when, and how" of a fraudulent scheme and the nexus to the submission of actual false claims.

*Fifth*, Relator's claims under the FCA's conspiracy and "reverse false claims" provisions are not supported by a single factual allegation.  Accordingly, Counts 3 and 4 must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Finally*, the Complaint's state law FCA claims (Counts 6-37) must be dismissed because they are based on the same deficient allegations as the federal FCA counts.

## BACKGROUND

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Medtronic and the Verte-Stack Brand

Founded in 1949, Medtronic, Inc. is a medical device company offering products used to treat a wide range of chronic diseases, including heart disease, neurological disorders, spinal conditions, and vascular diseases.  Medtronic's spinal division develops and sells medical devices for use in spine surgeries.  Spinal fusion is a type of surgery in which vertebrae in the spine are essentially welded, or fused, together so they heal into a single, solid bone.

The bulk of the Complaint's allegations concern Verte-Stack products.[1]  Verte-Stack is a brand of FDA-cleared vertebral body replacement devices, which are used to replace the space left by the removal of both a vertebrae (or part of it) and an adjacent disc.  *See* Am. Compl. ¶ 156.  The device also holds bone grafting material that helps the fusion and implant heal into a single, solid bone.  When a vertebra is removed, the interbody fusion procedure is sometimes called a corpectomy.  *Id.* ¶ 209.

A device used in an interbody fusion procedure that, unlike a corpectomy, does not involve the removal of vertebrae serves similar purposes: to replace the space left by the removal of a disc between adjacent vertebrae and to hold bone grafting material that will help the fusion heal into a single, solid bone.  Devices used in such procedures are referred to as "interbody fusion" or "intervertebral body fusion" devices.  The design and functionality of vertebral body replacement devices and interbody fusion devices are similar.  *See* FDA Medical Devices Advisory Committee, Orthopedic and Rehabilitation Devices Panel, Transcript of Open Session, at 44, 106, 162 (Dec. 11, 2003) ("FDA Transcript").[2]  Both types of devices are often referred to as "cages" or "spacers."  Am. Compl. ¶ 209; *but see id.* ¶¶ 239, 257.

Under the Verte-Stack brand, there are several families of products, each with unique design features.  Each "family" consists of a variety of stackable components of different sizes and heights to ensure a surgeon can match the implant to the patient's anatomy and the space created by the corpectomy.  The Verte-Stack brand devices, including the sub-families like Verte-Stack Cornerstone, Verte-Stack Anatomic PEEK, and Verte-Stack Capstone, were cleared through the FDA's 510(k) process as vertebral body replacement devices for use in corpectomies in the thoracic

---

[1]     Although the Complaint appears to identify a handful of "Subject Devices" outside the Verte-Stack brand, *see* Am. Compl. ¶¶ 126, 152, 157, it does not make any discernible allegations of fraudulent conduct regarding those devices and Medtronic cannot discern what Relator believes was fraudulent with respect to those devices.
[2]     Available at www.fda.gov/ohrms/dockets/ac/03/transcripts/4011T1.doc.  The Court may take judicial notice of public records and government documents without converting a motion to dismiss into a motion for summary judgment.  *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014).

and lumbar regions of the spine. *Id.* ¶ 164. The Verte-Stack devices may be used "individually or stacked together." *See* Verte-Stack Spinal System, 510(k) Summary (Mar. 14, 2007).[3]

B.  The FDA's Regulation of Spinal Cages

Pursuant to the FDCA, 21 U.S.C. § 301 *et seq.*, the FDA approves or clears medical devices before they may be marketed in the United States. There are three classes of devices under the FDCA. *Id.* § 360c(a)(1). In general, the FDA "approves" Class III devices through the rigorous premarket approval ("PMA") process, which requires the manufacturer to submit valid scientific evidence demonstrating to the FDA's satisfaction that there is reasonable assurance that the device is safe and effective for its intended use.[4] *Id.* §§ 360c(a)(1)(C), 360e(a), (c), (d); 21 C.F.R. pt. 814. In contrast, the FDA generally "clears" Class II devices through the less burdensome 510(k) premarket notification process, which requires that the new device be shown to be "substantially equivalent" to another legally marketed device that (a) FDA has already cleared or (b) for other reasons does not require a PMA. *See* 21 U.S.C. § 360c(i). Class I devices are not relevant to this matter.

Vertebral body replacement devices are, and have long been, Class II devices. *See* 21 C.F.R. § 888.3060; FDA Transcript at 185. In July 2007, the FDA adopted final regulations that down-classified intervertebral body fusion devices used in all regions of the spine from Class III to Class II (requiring 510(k) clearance). *See* 21 C.F.R. § 888.3080. A primary reason interbody fusion devices were down classified was because they are so similar to vertebral body replacement devices that were already Class II devices. *See* FDA Transcript at 44, 106, 162, 216.

Following that down-classification, Medtronic submitted 510(k) applications for certain interbody fusion devices (formerly Class III devices) that were nearly

---

[3]  Available at https://www.accessdata.fda.gov/cdrh_docs/pdf7/K070173.pdf.
[4]  Class III devices that were marketed before the 1976 amendments to the FDCA, and substantially equivalent devices, were "grandfathered" under the statute and may be cleared through the 510(k) premarket notification process.

– 4 –

identical in shape to the end caps (one of the component pieces) of devices that the FDA had previously cleared under the Verte-Stack brand name (as Class II devices). Am. Compl. ¶¶ 233, 239.  For example, "Verte-Stack Cornerstone" was cleared in 2003 for use in corpectomy procedures.  In June 2010, "Cornerstone" (without the Verte-Stack brand name) was cleared for use as an interbody spacer.  *Id.* ¶¶ 150, 271.

C.    Procedural Background

Relator The Dan Abrams Company LLC filed its initial *qui tam* complaint on February 19, 2015 alleging violations of the federal and analogous state FCA statutes. Dkt. 1.  Relator filed its First Amended Complaint (the "Complaint") on July 29, 2016.  Dkt. 32.  Relator filed the Complaint on behalf of the federal government, thirty-one states, and the District of Columbia, all of which declined to intervene. Dkt. 18.  The sole member of The Dan Abrams Company LLC is Bryan Shapiro, a former sales representative for Medtronic.[5]  Dkt. 53.

Relator alleges that Medtronic caused physicians and hospitals to make false claims for reimbursement to federal health care programs because the "Subject Devices" were "misbranded" in violation of the FDCA.  Am. Compl. ¶¶ 331-34.  In particular, Relator alleges that Medtronic obtained FDA clearance for the Verte-Stack Subject Devices by falsely telling the FDA that the devices were intended for use in corpectomy procedures in the lower (thoracic and lumbar, or T/L) regions of the spine.  Relator claims that certain Verte-Stack devices, in fact, could only be used in the upper (cervical) region of the spine, and that some Verte-Stack devices were designed to be used as interbody spacers in the T/L spine.[6]  That is, Relator alleges that the Verte-Stack devices were designed and promoted to be, and were in fact, used off label.

---

[5]    This suit appears to be an outgrowth of a products liability and medical malpractice case that Jerome Lew brought against Medtronic in California state court. That case proceeded to discovery, during which Bryan Shapiro was deposed by Lew's counsel.  The original complaint, unlike the First Amended Complaint, alleged that Lew was a member of The Dan Abrams Company.  Dkt. 1.

[6]    Because the two alleged schemes are deficient for the same reasons, Defendants do not differentiate between them below.

1    According to Relator, the Subject Devices were categorically ineligible for

2 reimbursement by federal health care programs because they were "misbranded" or

3 because they were "experimental" or "investigational."  Am. Compl. ¶¶ 2, 124, 334,

4 338, 342.  Relator claims—incorrectly—that the federal government will not

5 reimburse for off-label uses or for devices that are "misbranded" under the FDCA.  *Id.*

6 ¶¶ 334, 338.  In addition, Relator alleges that Medtronic caused the submission of

7 false claims for unidentified products by violating the Anti-Kickback Statute.  *Id.*

8 ¶¶ 391-92.

9 **II.    STATUTORY BACKGROUND**

10    A.    <u>The Food, Drug, and Cosmetic Act</u>

11    The FDA approves or clears medical devices along with their approved

12 labeling.  21 U.S.C. §§ 360c(i)(1), 360e(d)(2)(A).  Uses described on the FDA-

13 approved labeling are commonly referred to as "on-label" uses, while other potential

14 uses are frequently referred to as "off-label" uses.  The FDA does not regulate the

15 practice of medicine, and physicians are free to use cleared and approved devices for

16 any purpose they see fit, including off-label uses.  21 U.S.C. § 396; *see also* Am.

17 Compl. ¶ 126.  Courts and the FDA have long recognized that off-label use by

18 medical professionals is often an important part of accepted medical practice.  *See*

19 *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001).

20    The FDCA expressly bars private enforcement of the FDCA, including for

21 alleged fraud on the FDA.  *Id.* at 349 n.4.  Although citizens may petition the FDA

22 requesting administrative action, the Act specifies that "proceedings for the

23 enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of

24 the United States."  21 U.S.C. § 337(a).

25    B.    <u>Government Coverage and Reimbursement</u>

26    Medicare provides federally funded health insurance to the elderly and disabled,

27 while Medicaid provides health care coverage for low income and disabled

28

individuals.[7]  The Centers for Medicare & Medicaid Services ("CMS") oversee both programs, although Medicare is administered through local contractors and Medicaid is administered on a state-by-state basis.  42 U.S.C. §§ 1395, 1396 *et seq.*

The cornerstone for Medicare coverage decisions is that an item or service be "reasonable and necessary for the diagnosis or treatment" of an illness.  42 U.S.C. § 1395y(a)(1)(A).  As reflected in the Medicare Program Integrity Manual, CMS has interpreted "reasonable and necessary" to mean (1) safe and effective; (2) not experimental or investigational; and (3) appropriate, meaning in accordance with accepted standards of medical practice.  Medicare Program Integrity Manual § 13.5.1; Medicare Program, Criteria and Procedures for Extending Coverage to Certain Devices and Related Services, 60 Fed. Reg. 48,417, 48,420 (Sept. 19, 1995).  CMS does not categorically prohibit coverage of off-label uses of devices.  CMS distinguishes the off-label use of devices whose FDA-approved labeling sets out a different indicated use, which may be covered in appropriate circumstances, from the use of devices that have not yet been cleared by the FDA, which are generally non-reimbursable.[8]  *See* Medicare Benefit Policy Manual §§ 14.10, 14.20; Medicare Program Integrity Manual § 13.5.1; Am. Compl. ¶ 75.

Medicaid reimburses for "medically necessary" treatments.  *See, e.g.*, 42 C.F.R. § 440.230; *United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 318,

---

[7]     The Complaint alleges that Medtronic caused false claims to be submitted to government health care programs, including "Medicare, State Medicaid programs, the Department of Veterans Affairs, TRICARE, and other federal, state, county, and municipal insurance and purchasing programs."  Am. Compl. ¶ 1.  However, aside from a few background averments regarding the federal TRICARE and FEHBP programs, *id.* ¶¶ 111-13, later allegations in the Complaint refer only to Medicare or Medicaid.

[8]     CMS permits coverage of certain non-cleared/non-approved devices if they are subject to an Investigational Device Exemption ("IDE") by FDA and are part of a clinical trial.  Medicare Benefit Policy Manual § 14.20.  The Complaint's allegations regarding "Medicare's exclusion of experimental and investigational devices" are inapposite.  Am. Compl. ¶¶ 72-104.  The referenced regulations exclusively address coverage of IDE devices; they do not concern otherwise cleared or approved devices like Verte-Stack.  *See id.* ¶ 75(b).  "Experimental" and "investigational" are labels CMS uses to refer to devices that, unlike Verte-Stack, have not received FDA clearance or approval and/or are undergoing clinical study.

– 7 –

347 (D. Mass. 2011).  Each state Medicaid program has discretion to determine what it will cover and how to define "medically necessary."  *See PhRMA v. Walsh*, 538 U.S. 644, 665 (2003); *Detgen ex rel. Detgen v. Janek*, 752 F.3d 627, 631 (5th Cir. 2014) ("States have broad discretion to implement the Medicaid Act.").  The Complaint does not make any allegations about any state Medicaid program's coverage rules.

## ARGUMENT

The FCA, 31 U.S.C. § 3729 *et seq.*, prohibits the submission of false or fraudulent claims to the federal government.  The FCA imposes liability on a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who knowingly makes a "false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(A), (B).  A false claim is actionable only if the falsity of the claim was material to the government's decision to pay.  *Id.* § 3729(b)(4); *Universal Health Servs., Inc. v. United States ex rel. Escobar*, --- U.S. ---, 136 S. Ct. 1989, 2003-04 (2016).  A claim is not false if it requests payment for services that are eligible for payment under the standards of the particular entity to which it was submitted.  "Violations of law, rules, or regulations alone do not create a cause of action" under the FCA.  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).

A complaint must allege facts that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A viable complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Although courts assume that the allegations in the complaint are true, they are "not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, under Rule 9(b), an FCA complaint must "allege with particularity the 'who, what, when, where and how' of a consistent course of fraudulent conduct."  *United States ex rel. Perry v. Hooker Creek Asphalt & Paving*, LLC, 565 F. App'x

– 8 –

669, 670 (9th Cir. 2014) (citations omitted).

## I.   The Complaint Fails to State a Claim That Medtronic Caused False Claims for Verte-Stack.

Relator alleges that Medtronic caused the submission of false claims under the federal and state FCAs (Counts 1-2, 6-37) because the Verte-Stack devices were supposedly misbranded and used off-label and thus were, according to Relator's misstatement of the law, categorically ineligible for reimbursement.  Am. Compl. ¶¶ 334-38.  The Complaint's Verte-Stack allegations fail to plead essential elements of an FCA cause of action.  First, the Complaint does not plausibly allege that any claims for Verte-Stack were *false*.  *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010).  Second, it does not, and cannot, plausibly allege that any falsity was material to a government payment decision.  *See Escobar*, 136 S. Ct. at 2003-04.  In addition, the Complaint's Verte-Stack allegations are deficient under Rule 9(b) because they do not plead a fraudulent scheme or a factual nexus to actual false claims with particularity.  Finally, independent of those grounds, the Complaint's Verte-Stack allegations should be dismissed under the FCA's six-year statute of limitations.

### A.   Relator Fails to Allege Any Plausibly False Claims Because Verte-Stack Devices Were Not Categorically Ineligible for Reimbursement.

Relator offers two theories of falsity, each of which fails to support an FCA action as a matter of law: (1) that "misbranded devices . . . are not eligible to be purchased by Medicare, Medicaid or any other health insurance program funded by the United States," Am. Compl. ¶ 334; and (2) that "Medicare and Medicaid do not pay for devices or drugs that are used for non-FDA approved indications," *id.* ¶ 338.  The Court is "not bound to accept" these plainly incorrect statements of the law.  *Iqbal*, 556 U.S. at 678.

Contrary to Relator's assertion that Medicare and Medicaid categorically do not pay for misbranded devices or devices used off-label, Am. Compl. ¶¶ 334, 338, it is

– 9 –

well-established that misbranding—or any other violation of the FDCA—does not
render resulting claims for reimbursement "false" under the FCA.[9]  *E.g.*, *United States
ex rel. Rost v. Pfizer Inc.*, 507 F.3d 720, 727 (1st Cir. 2007) (overruled in part on other
grounds) ("FCA liability does not attach to violations of federal law or regulations,
such as marketing of drugs in violation of the FDCA, that are independent of any false
claim."); *Nowak*, 806 F. Supp. 2d at 345; *see also Carson v. DePuy Spine, Inc.*, 365 F.
App'x 812, 815 (9th Cir. 2010) (unpublished) ("[A] manufacturer is not liable merely
because it sells a device with knowledge that the prescribing doctor intends an off-
label use.").  A manufacturer's promotional conduct is not, standing alone, relevant to
whether a claim is false: Neither Medicare nor Medicaid, nor any other federally
funded health care program, prohibits coverage of a cleared device on the grounds that
it was promoted for off-label uses, or in violation of the FDCA or the FDA's
marketing regulations.  And Relator does not (and cannot) provide any support for his
contrary position.

Likewise, it is well-established that off-label *use* of a device does not, standing
alone, render an associated claim for government reimbursement false or fraudulent.
*E.g.*, *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1392
(C.D. Cal. 2014) (collecting cases) ("CMS' practice and understanding [is] that if the
FDA has approved a device for at least one purpose, an off-label use can be
reimbursed by Medicare.").  Instead of some blanket ban Relator may wish existed on
off-label uses, the federal health care programs expressly permit reimbursement for
cleared medical devices when their use is "medically necessary" or "reasonable and
necessary" to treat a particular patient.  *Id.* at 1373, 1392; *United States ex rel. Bennett
v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 752 (S.D. Tex. 2010); *Nowak*, 806 F. Supp.

---

[9]     The FDCA prohibits the distribution of a "misbranded" device.  21 U.S.C.
§ 331(a).  Under the statute, a device is misbranded if its labeling does not contain
"adequate directions for use."  *Id.* § 352(f).  As the Second Circuit held, "[w]hile the
FDCA makes it a crime to misbrand," federal law "do[es] not expressly prohibit"—
and cannot be construed to prohibit consistent with the First Amendment—truthful
"off-label promotion."  *United States v. Caronia*, 703 F.3d 149, 160 (2d Cir. 2012).

– 10 –

2d at 347-48.  Whether a cleared medical device was or was not medically necessary, and thus whether an associated claim for payment is false, is a patient-specific, fact-intensive inquiry that the Complaint here attempts to avoid through conclusory labels and misrepresentations of the law.

Perhaps anticipating the well-established law that off-label promotion and use are not, on their own, a basis for FCA liability, the Complaint contends that the Verte-Stack devices were, in fact, not legally marketed devices at all.  According to Relator, Medtronic allegedly lied to the FDA in 510(k) submissions for Verte-Stack products; therefore, according to Relator, they were not legally cleared, and thus not legally marketed.  Am. Compl. ¶¶ 164, 274.  Relator maintains that the Court (presumably through a jury verdict) should set aside the FDA clearances and deem the devices to be, instead, merely "experimental" or "investigational."  *Id.* ¶¶ 124, 149.  The "factual" basis for this contention is nothing more than Relator's say-so that the devices were, in fact, designed to be used off label.  Even if true, that fact would not render the FDA's clearance somehow automatically void, as Relator's theory of FCA liability necessarily assumes.  The FDCA specifically contemplates that a device may be cleared through the 510(k) process even if it has obvious or expected off-label uses. 21 U.S.C. § 360c(i)(1)(E) (authorizing FDA to require a limitation or other statement in the labeling of a device cleared through the 510(k) process if "there is a reasonable likelihood that the device will be used for an intended use not identified in the proposed labeling").  The Subject Devices were in fact cleared by the FDA under the 510(k) process, Am. Compl. ¶¶ 265-67, which clearance expressly permitted Medtronic's "introduction or delivery for introduction into interstate commerce for commercial distribution" the cleared devices.  21 U.S.C. § 360(k).

The FDA has specific statutory enforcement mechanisms to police violations of the FDCA, including fraudulent submissions in connection with an approval or clearance, *see, e.g.*, 21 U.S.C. §§ 332 (injunctive relief), 334(a)(2)(D) (seizure of the device), yet it has never indicated that any Verte-Stack devices were improperly

– 11 –

cleared through the 510(k) process.  *See Buckman*, 531 U.S. at 349; *id.* at 353-54 (Stevens, J. concurring) (concurring with dismissal of state tort claim alleging fraud on the FDA in approving a device because plaintiffs could only speculate as to the alleged fraud where FDA had not removed the device from the market).  Furthermore, an FCA action by a private relator is an impermissible vehicle to prosecute an alleged violation of the FDCA or second-guess the FDA's judgment in clearing a device.  *See id.* at 349 (majority opinion), 354 (concurring opinion); *United States ex rel. D'Agostino v. EV3, Inc.*, 153 F. Supp. 3d 519, 539 (D. Mass. 2015) ("In short, an FCA action is not the appropriate vehicle for this court to exercise its judgment in second-guessing decisions taken by the FDA in approving the use of medical devices simply because the government happens to pay for some of them.").  Federal health care programs regularly reimburse for off-label uses of medical devices and thus claims for off-label uses are not categorically false.  *E.g.*, *Modglin*, 48 F. Supp. 3d at 1392. Without such a categorical rule, the Complaint is devoid of any factual allegations that false claims for payment were made to the government; thus, Relator fails to state a claim for relief.[10]

Relator tries to dress up the alleged conduct with conclusory labels in an attempt to circumvent the well-established limits of FCA law—labeling Verte-Stack devices "experimental" or "investigational."  As Relator concedes, because these devices were cleared through the 510(k) process, they were legally marketed and eligible for payment by federal health care programs.  Am. Compl. ¶ 75(b).  As used in the Medicare coverage provisions Relator cites,[11] *id.* ¶¶ 72-104, a potentially "experimental" (or "investigational") device refers to an *unapproved* device that has an FDA-approved Investigational Device Exemption ("IDE") in effect in the context

---

[10]   Relator has not alleged that any claim was false in any other way.  The Complaint does not, for example, allege that any physician did not perform the procedures for which they sought payment or that particular patients did not need the surgery that was performed.

[11]   Because Relator does not make any specific allegations concerning Medicaid coverage, he has not pled any falsity as to Medicaid.  *Modgin*, 48 F. Supp. 2d at 1404.

of a clinical study.  *See* 42 C.F.R. § 405.201.  In fact, if a Verte-Stack device was being used in a clinical study (whether as a vertebral body replacement or interbody fusion device[12]) it would be considered "*non*experimental/investigational" by CMS and therefore eligible for Medicare reimbursement.  42 C.F.R. § 405.201(b) (effective Dec. 10, 2013) (defining "Category B (Nonexperimental/investigational) device" to include any device type that has been previously cleared by FDA); *Nowak*, 806 F. Supp. 2d at 348 ("certain investigational devices . . .  may be reimbursable").  In any event, because the Verte-Stack devices were cleared by the FDA and were not subject to an IDE, there is no colorable argument that Medicare's reimbursement guidelines for "experimental" devices even apply.  *See* Medicare Benefit Policy Manual §§ 14.10, 14.20; *Nowak*, 806 F. Supp. 2d at 348; *United States ex rel. Bennett v. Boston Scientific Corp.*, No. H-07-2467, 2011 WL 1231577, at *26-27 (S.D. Tex. Mar. 31, 2011).  Relator's attempt to shoehorn the allegations into inapplicable regulations fails as a matter of law.

Without allegations of "an actual false claim"—the "*sine qua non* of a False Claims Act violation"—Relator's allegations regarding Verte-Stack fail to state a claim as a matter of law.  *United States ex rel. Alfatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 997, 1002 (9th Cir. 2002).

**B.**     Verte-Stack Claims Could Not Have Been Materially False Because the Devices Are Reimbursed Based on Diagnosis-Related Groups.

Even if Relator had adequately alleged a basis for falsity, he does not even attempt to allege that any such falsity was material.  A false claim is actionable under the FCA if, and only if, it was material to the government's decision to pay.  *See, e.g.*, 31 U.S.C. § 3729(b)(4); *Escobar*, 136 S. Ct. at 1996; *United States ex rel. Hendow v.*

---

[12]     Throughout the potentially relevant period here (beginning no earlier than February 2009), both interbody fusion devices and vertebral body replacement devices, as cleared Class II devices, were eligible for reimbursement as Category B (nonexperimental/investigational) devices under CMS standards.  *See* 42 C.F.R. § 405.201.  Under the CMS final rule effective before December 10, 2013, Class II devices were automatically categorized as Category B for CMS coverage purposes. 60 Fed. Reg. 48,417 (Sept. 19, 1995).

1  *Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006).  In this context, "'material'

2  means having a natural tendency to influence."  31 U.S.C. § 3729(b)(4).  The

3  Complaint here fails to plead facts showing that the alleged misconduct was material

4  to the government's payment decision.  *Ebeid*, 616 F.3d at 998; *see Escobar*, 136 S.

5  Ct. at 2003-04 (instructing courts to look to the government's actual behavior in

6  paying claims to evaluate materiality).

7      Government health care programs do not pay for Verte-Stack on a per-product

8  or per-service basis.  Rather, Medicare and most state Medicaid programs pay a *flat*

9  *fee* based on a patient's diagnosis and the procedures performed during an inpatient

10  hospital stay, regardless of the particular treatment or the actual cost of providing it to

11  a particular patient.[13]  *See* 42 U.S.C. § 1395ww(d); 42 C.F.R. §§ 412.2, 412.60

12  (Medicare); Medicaid and CHIP Payment and Access Commission, Medicaid

13  Inpatient Hospital Services Payment Policy (Mar. 2016).[14]  Thus, the government pays

14  the same amount regardless of whether a specific device is used or whether it was

15  used on or off label.  *See* 42 U.S.C. § 1395ww(d); 42 C.F.R. §§ 419.2, 419.31.

16      A surgeon's use of Verte-Stack, how many Verte-Stack components were used,

17  or whether the spinal fusion procedure involved a corpectomy does not impact the

18  amount of money the government pays for a particular spinal surgery.  *See* CMS,

19  Medicare-Diagnosis Related Group Codes (2008), Nos. 453-460, 471-73.[15]  In all

20  instances, Medicare and Medicaid paid the same amount for the procedures in which

21  Verte-Stack was used.  In fact, Medicare and Medicaid personnel would not even

22  know whether Verte-Stack or some other device was used.  Simply put, "if the amount

23  paid by Medicare [and, by extension, other DRG-based programs] remains

24  _____

25  [13]      FEHBP and TRICARE also use a flat fee reimbursement system modeled after Medicare's.  *See, e.g.*, 5 C.F.R. § 890.904(a) (FEHBP); 38 C.F.R. § 17.270(a); 32 C.F.R. § 199.14(a)(1).

26  [14]      Available at https://www.macpac.gov/wp-content/uploads/2016/03/Medicaid-Inpatient-Hospital-Services-Payment-Policy.pdf.

27  [15]      Available at https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-

28  Reports/MedicareFeeforSvcPartsAB/downloads/DRGdesc08.pdf.

1  unchanged, the alleged scheme cannot possibly be said to have influenced the

2  government's decision to pay." *United States ex rel. Wagemann v. Doctor's Hosp. of*

3  *Slidell*, No. 09-3506, 2010 WL 3168087, at *7 (E.D. La. Aug. 6, 2010); *see, e.g.*,

4  *United States ex rel. Zemplenyi v. Grp. Health Coop.*, No. C09-603, 2011 WL

5  814261, at *1-2 (W.D. Wash. Mar. 3, 2011) (dismissing FCA claim where health care

6  provider was "paid a contracted or fixed rate per patient regardless of the number or

7  type of services provided"); *United States ex rel. Stephens v. Tissue Science Labs.,*

8  *Inc.*, 664 F. Supp. 2d 1310, 1318 (N.D. Ga. 2009); *United States ex rel. Kennedy v.*

9  *Aventis Pharm., Inc.*, No. 03C2750, 2008 WL 5211021, at *3 (N.D. Ill. Dec. 10,

10  2008); *United States ex rel. Digiovanni v. St. Joseph's/Candler Health Sys., Inc.*, No.

11  CV404-190, 2008 WL 395012, at *5-6 (S.D. Ga. Feb. 8, 2008).  Thus, the particular

12  use to which a surgeon put a Verte-Stack device, or the use of a Verte-Stack device *at*

13  *all*, could not be material to a government payment decision.

14            C.        The Complaint Fails to Plead the Verte-Stack Allegations with the

15                      Particularity Required Under Rule 9(b).

16            The Complaint's Verte-Stack allegations also fail to satisfy the requirements of

17  Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *United States ex rel. Cafasso v. Gen.*

18  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011).  The Complaint fails to

19  satisfy Rule 9(b) because it does not allege the "particular details of a scheme to

20  submit false claims paired with reliable indicia that lead to a strong inference that

21  claims were actually submitted."  *Ebeid*, 616 F.3d at 998-99 (citation omitted).

22  Specifically, Relator does not "allege with particularity the 'who, what, when, where

23  and how' of a consistent course of fraudulent conduct."  *Perry*, 565 F. App'x at 670

24  (quoting *Cafasso*, 637 F.3d at 1054-55); *see United States ex rel. Swoben v. United*

25  *Healthcare Ins. Co.*, --- F.3d ---, 2016 WL 4205941, at *12 (9th Cir. Aug. 10, 2016).

26            Rule 9(b) is intended to ensure a complaint provides "enough detail to give [the

27  defendant] notice of the particular misconduct which is alleged to constitute the fraud

28  charged so that [it] can defend against the charge and not just deny that [it] has done

– 15 –

anything wrong."  *Ebeid*, 616 F.3d at 999 (citation omitted).  The Complaint here fails
that test.  Defendants cannot determine from a plain reading of the Complaint basic
information about the misconduct alleged.  The Complaint does not identify specific
misconduct by Defendants, when it occurred, or how that misconduct led to false
claims.  For example, Relator identifies only a time frame for the Verte-Stack
allegations in the boilerplate state law causes of action: alleging misconduct from "at
least 2001 to the present."  *E.g.*, Am. Compl. ¶¶ 410, 439.  Likewise, the Complaint
does not clearly identify what the "Subject Devices" at issue even are or what
fraudulent conduct is alleged as to each of them.  *See generally* Am. Compl. ¶¶ 126,
134, 150-52.  Although most of the allegations relate to Verte-Stack, the Complaint
also identifies T2 Altitude, T2 XVBR, and Pyramesh as "Subject Devices," but
nowhere does it explain what Medtronic conduct with respect to those devices was
supposedly fraudulent, who engaged in that conduct, or when they engaged in the
conduct.  The required particularity is also lacking as to each of the devices in the
Verte-Stack family.

The Complaint does nothing more than assert that all off-label uses of Verte-
Stack devices were ineligible for reimbursement because the devices were
"experimental" or "investigational" or "misbranded."  Am. Compl. ¶¶ 2, 124, 334,
338.  None of those conclusory labels can substitute for the particularity required
under Rule 9(b).  *Modglin*, 48 F. Supp. 3d at 1404 ("Plaintiffs must plead, with
specificity, what makes defendants' claims false.").  Relator relies on a theory of
"categorical" falsity—suggesting that the Court should set aside the FDA clearances
and, on that basis, deem the devices not legally marketed—and alleges that *every*
claim involving Verte-Stack was *necessarily* ineligible for reimbursement.  As
discussed above, Relator's theories of categorical falsity do not support an FCA action.

To state a viable FCA claim based on off-label use of a product, Relator must
allege—with the degree of particularity sufficient to satisfy Rule 9(b)—the
circumstances surrounding a specific use that rendered that use not "medically

– 16 –

1   necessary" or not eligible for reimbursement under the standards of particular

2   government health care programs.  *Nowak*, 806 F. Supp. 2d at 354-55.  Relator has not

3   even attempted to do so.[16]  In short, Relator has pled neither "particular details of a

4   scheme to submit false claims" nor "reliable indicia that lead to a strong inference that

5   claims were actually submitted."  *Ebeid*, 616 F.3d at 998-99 (citation omitted).

6       The Complaint's allegations, taken together, do not satisfy even the plausibility

7   requirements of Rule 8, and they certainly do not provide Defendants with the detailed

8   allegations of fraud required under Rule 9(b).  *See Escobar*, 136 S. Ct. at 2004 n.6.

9       D.   <u>Relator's Claims Based on the Verte-Stack Allegations Are Barred by the</u>

10          <u>FCA's Statute of Limitations.</u>

11       Although the Complaint does not identify the particular time frame for its

12   federal FCA claims, any allegedly false claims submitted prior to February 19, 2009

13   are barred by the FCA's six-year statute of limitations.[17]  *See* 31 U.S.C. § 3731(b)(1);

14   *United States v. Rivera*, 55 F.3d 703, 707 (1st Cir. 1995) (holding that the FCA statute

15   of limitations runs from when the claim is submitted to the government).

16       Relator cannot extend the FCA's statute of limitations beyond six years before

17   he filed this action.  Although the FCA's standard six-year limitations period is

18   subject to a tolling provision (up to a maximum of 10 years), 31 U.S.C. § 3731(b), that

19   provision does not benefit Relator.  In a case in which the government has declined to

20   intervene, the Ninth Circuit holds that the tolling provision runs specifically from

21   when the *individual relator* knew or reasonably should have known the facts material

22   to his complaint.  *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217-

23   18 (9th Cir. 1996).  Bryan Shapiro (the sole member of the named Relator LLC) was a

24   _____

25   [16]      The passing allegations concerning two Medicaid recipients in connection with the Complaint's discussion of adverse events, Am. Compl. ¶ 286, do not change this analysis.  The Complaint does not allege that the treatment received by those patients was not reasonable and necessary, or that associated Medicaid claims were otherwise ineligible for reimbursement under California or Louisiana's Medicaid programs.

27   [17]      Relator's claims under various state FCAs are similarly barred by the limitations periods applicable in each state.  A summary of those state limitations periods and the state claims barred by them has been filed herewith as Appendix A.

1   Medtronic employee privy to the same information on which he relies to bring this
2   Complaint for the entire potentially relevant period.  The Complaint does not allege
3   any facts to suggest that Medtronic hid any information from Mr. Shapiro (or anyone
4   else) for any period of time before he filed this action in 2015.  Accordingly, the six-
5   year statute of limitations applies and bars recovery on any allegedly false claims
6   submitted prior to February 19, 2009.

7       Critically, since July 2007, *i.e.*, for all claims within the statute of limitations
8   period, the FDA has treated interbody fusion devices as Class II devices, subject to the
9   510(k) process.  *See* 21 C.F.R. § 888.3080; Am. Compl. ¶ 270.  The Complaint asserts
10  that the off-label use of Verte-Stack devices as interbody fusion devices rendered the
11  devices "experimental" because they should have been approved through the more
12  rigorous PMA process.  For the reasons already discussed, that is not a viable theory
13  of falsity with respect to claims involving Verte-Stack used off label as an interbody
14  spacer even prior to the down-classification, but *it certainly is not viable with respect*
15  *to the post-2007 period*.  That is, Relator's alleged basis for the falsity of the claims
16  does not stand after the July 2007 down-classification and thus Relator has not
17  articulated any possible basis for falsity for the only claims within the statute of
18  limitations period.  In sum, Relator's claims based on Medtronic's promotion of
19  Verte-Stack are barred by the statute of limitations.

20  II.  **Relator's Kickback-Based FCA Claims Must Be Dismissed Because They**
21       **Are Not Supported by Plausible or Specific Factual Allegations.**

22      The Anti-Kickback Statute ("AKS") prohibits "knowingly and willfully
23  offer[ing] or pay[ing] any remuneration . . . to any person to induce such person . . . to
24  purchase . . . [any] item for which payment may be made in whole or in part under a
25  Federal health care program."  42 U.S.C. § 1320a-7b(b)(2)(B).  A claim that includes
26  "items or services resulting from a violation" of the AKS may constitute a false claim
27  under the FCA.  *Id.* § 1320a-7b(g).  Relator's AKS-based claim (Count 5), however,
28  must be dismissed under Rule 9(b) and the FCA's public disclosure bar.

A.     <u>Relator Fails to Plead a Cognizable FCA Claim Based on Violations of</u> <u>the Anti-Kickback Statute, and Certainly Not With the Specificity</u> <u>Required by Rule 9(b).</u>

Relator's AKS allegations describe conduct as to which there is no federal prohibition—he describes cooperative relationships between a manufacturer and prescribing doctors. The AKS does not generally prohibit financial relationships with health care professionals. Rather, the AKS prohibits the provision of remuneration with the specific intent to induce referrals to or purchases by a government health care program. *Id.* § 1320a-7b(b)(2)(B). Relator fails to plead an FCA claim based on an AKS violation because he does not allege, with the requisite particularity, facts supporting either the underlying AKS violation or the associated FCA violation.

Relator's kickback-based FCA claim cannot survive because he does not adequately allege specific illegal conduct that was intended to—and did in fact—induce providers to use Medtronic devices in government insured patients. *United States v. Ctr. for Diagnostic Imaging*, 787 F. Supp. 2d 1213, 1222 (W.D. Wash. 2011) ("[T]he AKS claim turns on whether [defendant] provided the free and discounted services as inducements for referral of government insured patients."). Relator asserts that Medtronic provided surgeons with remuneration by paying the expenses (such as food and printing costs) for business development events at which surgeons, without being paid by Medtronic, would speak about their practices and use of Medtronic products to other physicians. Am. Compl. ¶ 299. Medtronic calls these events co-marketing or Therapy Awareness Programs. *Id.*

The essence of the alleged "course of fraudulent conduct," *Vess v. Ciba-Geiby Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)—the AKS violation—is that illegal remuneration induced a purchase "for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2)(B). The Complaint thus fails to plead a *prima facie* case of FCA liability based on an AKS violation because it does not identify claims for payment to federal payors supposedly

– 19 –

caused by the illegal remuneration.  Instead of pleading facts to support a plausible inference that claims induced by a kickback were submitted to federal payors, Relator relies on threadbare assertions and assumptions.  *See, e.g.*, Am. Compl. ¶ 330 (revenue for referral development "was going to come from government healthcare payors"); *Iqbal*, 556 U.S. at 678.

Furthermore, the Complaint does not plead an AKS-based FCA violation with the specificity required by Rule 9(b).  The Complaint makes no attempt to allege any link between the supposed inducements and false claims for payment.  *See United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 799 (11th Cir. 2014); *United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 55 (D. Mass. 2001) (dismissing kickback theory of FCA liability due to the absence of an alleged link between the supposed kickback violations and the submission of false claims).  It does not allege that any of these programs, or related services, in fact induced a surgeon to implant a Medtronic device in a federally insured patient or induced a physician to refer a federally insured patient to a surgeon who used a Medtronic device.  *See United States ex rel. Roster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 824 (E.D. Tex. 2008) (dismissing FCA claim because "the Court is without information to suggest that kickbacks induced any recommendations connected to [] federal healthcare patients").  Nor does it even identify the products that the Therapy Awareness Programs allegedly induced physicians to purchase.  Nor does the Complaint allege who among the supposedly induced surgeons actually used a Medtronic device, what Medtronic device was used, when and where the kickback-induced device was used, and whether a claim was submitted to a government health care program for payment.  *See Perry*, 565 F. App'x at 670.

**B.**     <u>Relator's Conclusory Allegations Concerning Medtronic's Marketing</u>
<u>Programs Must Be Dismissed Under Rule 12(b)(6) and the FCA's Public</u>
<u>Disclosure Bar.</u>

Relator makes additional, especially vague allegations that Medtronic violated the Anti-Kickback Statute by providing "inducements" to doctors in the form of paying for training and travel, consulting, and entertainment.  Am. Compl. ¶¶ 4, 296-97.  The Complaint pleads no details regarding such programs, no resultant purchases or claims, or any intent to induce.  *See Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995).  These allegations are facially deficient and plainly fail to state a claim under both Rule 8 and Rule 12(b)(6).

Relator's passing references to AKS violations are also jurisdictionally barred under the FCA's public disclosure bar.  While the FCA encourages whistleblowers to bring forward knowledge of fraud, it is also designed to discourage frivolous suits by parasitic relators.  *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294-95 (2010).  To that end, the FCA prohibits *qui tam* actions by relators who simply feed off of previous disclosures of fraud rather than bringing new information to light.  The FCA's public disclosure bar precludes jurisdiction over suits based upon the prior public disclosure of the allegations underlying the *qui tam* suit.  31 U.S.C. § 3730(e)(4); *see United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016).  Medtronic's training and consulting payments, and their kickback implications, have been the subject of numerous previous FCA complaints.  *See United States ex rel. Poteet v. Lenke*, No. 1:07-cv-10237 (D. Mass. Feb. 7, 2007); *United States ex rel. Poteet v. Medtronic, Inc.*, No. 2:03-cv-02979 (W.D. Tenn. Dec. 29, 2003); *United States ex rel. Doe v. Medtronic, Inc.*, No. 2:02-cv-02709 (W.D. Tenn. Sept. 11, 2002).  The Complaint adds nothing to those previous disclosures.  Relator is, therefore, barred under the FCA's public disclosure bar from pursuing them here.

### III.   The Complaint Fails to Plead Particular Conduct By Each Defendant.

The Complaint alleges fraud against multiple defendants, yet pleads little or no conduct supposedly engaged in by any single defendant.  Instead, it groups all defendants together in an "everyone did everything" allegation.  *Destifino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).  "Rule 9(b) does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant."  *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997-98 (9th Cir. 2011) (citation omitted); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (holding that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).

The Complaint must, but does not, plead the conduct each defendant took in connection with the alleged fraud.  The Complaint alleges, for example, that "Defendants" manufactured, designed, and marketed devices, and that "Defendants" made false statements to the FDA.  Am. Compl. ¶¶ 260-61, 276-79.  But it does not allege which Defendant manufactured, designed, or promoted which device or made which supposedly false statement to the FDA.  At most, the Complaint includes references to Pricing and Rebate Agreements entered into by one of the defendants, Medtronic Sofamor Danek USA, Inc.  *Id.* ¶¶ 134, 153, 246.  As for the other five Defendants, the Complaint includes a table showing the devices each Defendant *registered* with the FDA, but neither the fact nor the act of registration is relevant to the fraudulent scheme alleged.  *Id.* ¶¶ 265-67.  This is not a case in which multiple defendants are alleged to have "engaged in precisely the same conduct."  *See Swoben*, 2016 WL 4205941, at *13.  So it is not sufficient to state that all defendants "fall under the Medtronic PLC corporate umbrella."  Am. Compl. ¶ 265; *Sarmiento v. Bank of N.Y. Mellon*, No. CIV. 10-00349, 2011 WL 884457, at *3 (D. Haw. Mar. 10, 2011) (citation omitted) ("[A] parent company and its subsidiary are two separate entities and the acts of one cannot be attributed to the other.").  Because the Complaint does not "identify the role of each defendant in the alleged fraudulent scheme," *Lee*, 655

– 22 –

F.3d at 997-98, it fails to satisfy Rule 9(b).

## IV.   The Complaint Does Not Plead Any Facts to Support Counts 3 and 4, and They Must Be Dismissed.

In Count 3, Relator asserts an FCA conspiracy claim under Section 3729(a)(1)(C) by vaguely alleging that Medtronic "engaged in a conspiracy with physicians and facilities" to violate the FCA.  Am. Compl. ¶¶ 367-77.  Count 3 is barely even supported by a "formulaic recitation of the elements of the cause of action."  *Twombly*, 550 U.S. at 555.  Relator has not alleged any agreement among defendants or "with physicians and facilities," any overt act performed in furtherance of the supposed conspiracy, or any other information to support Count 3's threadbare averments.  *See* Am. Compl. ¶¶ 367-69; *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991); *see also United States ex rel. Kelly v. Serco, Inc.*, No. 11cv2975, 2014 WL 4988462, at *10-11 (S.D. Cal. Oct. 6, 2014).  Relator plainly fails to adequately plead the elements of an FCA conspiracy claim.  *See, e.g.*, *United States ex rel. Marion v. Heald Coll., LLC*, No. 5:12-CV-02067, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (dismissing conspiracy claim because complaint contains only conclusory allegations with no evidence of agreement to defraud).

Count 4 asserts a so-called reverse false claim under Section 3729(a)(1)(G).  Am. Compl. ¶¶ 378-88.  A "reverse" FCA claim arises when a defendant owes money *to the government* and either makes a false statement material to that obligation or does something to avoid paying that money to the government.  Here, again, Count 4 is supported by nothing more than a "formulaic recitation" of the statutory language.  *Twombly*, 550 U.S. at 555; *see* Am. Compl. ¶¶ 378-80.  The Complaint simply does not plead—and certainly not with Rule 9(b) particularity—that Medtronic owed the federal government money in any capacity whatsoever, or that Medtronic did or said something that decreased or avoided such an obligation to pay money.  Because the Complaint contains no facts whatsoever to support these causes of action, Counts 3 and 4 must be dismissed for failing to state a claim.

## V.  Relator's State Law Claims Fail As a Matter of Law.

Relator's numerous additional state law claims are based on the state-law equivalents of the federal FCA, and the underlying facts and legal theories in support of those state law claims are identical to the federal claims.  Accordingly, these state law claims fail on the same grounds as the federal claims.  *See, e.g.*, *United States v. Shasta Servs. Inc.*, 440 F. Supp. 2d 1108, 1114 (E.D. Cal. 2006).  Relator alleges no additional facts in support of the state law claims and has not alleged, much less with particularity, either that a claim was submitted to any state plaintiff or that Medtronic caused the submission of such a claim.  Consequently, Relator's state law claims should be dismissed under both Rule 12(b)(6) and Rule 9(b).

In addition, Maryland's FCA statute mandates that an action be dismissed once Maryland declines to intervene.  Md. Code, Health – General, § 2-604(a)(7).  All states and the federal government have declined to intervene in this action.  Dkt. 18.  Accordingly, Count 19 must be dismissed outright.[18]

## VI.  The Court Should Dismiss Relator's Claims With Prejudice.

The operative First Amended Complaint asserts theories of FCA liability that fundamentally fail to state a claim under the law.  Relator's claims rest on fictional assertions that off-label promotion and off-label use bar payment by government health care programs.  There is no cure for the fatal deficiencies in the underlying theories of fraud, and any amendment would be futile.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone can justify the denial of a motion to amend.").  Furthermore, as an insider to Medtronic, Bryan Shapiro had access to information to support his claims before the First Amended Complaint was filed, and he was required to provide all the material information in support of his claims to the government prior to filing.  31 U.S.C. § 3730(b)(2).  Yet, even after amending, the

---

[18]   In light of the Complaint's facial pleading deficiencies with respect to state Medicaid claims, including the failure to plead any details about any state Medicaid program, Defendants do not undertake a comprehensive review of each state's unique procedural requirements for FCA actions.

1 | Complaint remains both factually and legally deficient.

2 | **CONCLUSION**

3 |         For the foregoing reasons, the Court should dismiss all counts in the First

4 | Amended Complaint.  Because Relator has failed to state a claim despite having over

5 | a year to perfect his claims and having already amended his complaint, dismissal

6 | should be with prejudice.

7 |

8 | DATED: October 14, 2016                    ROPES & GRAY LLP

9 |

10 |                                          By: /s/ Laura G. Hoey
                                             Laura G. Hoey *(admitted Pro Hac Vice)*
11 |                                          (*Laura.Hoey@ropesgray.com*)
                                             191 North Wacker Drive, 32nd Floor
12 |                                          Chicago, IL  60606
                                             Telephone:  312.845.1318
13 |                                          Facsimile:   312.845.5562

14 |                                          James Dowden *(admitted Pro Hac Vice)*
                                             (*James.Dowden@ropesgray.com*)
15 |                                          Emily J. Derr *(admitted Pro Hac Vice)*
                                             (*Emily.Derr@ropesgray.com*)
16 |                                          800 Boylston Street, Prudential Tower
                                             Boston, MA  02199-3600
17 |                                          Telephone:  617.951.7000
                                             Facsimile:   617.951.7050

18 |

19 |                                          Michael K. Brown (SBN 104252)
                                             (*mkbrown@reedsmith.com*)
20 |                                          Mildred Segura (SBN 210850)
                                             (*msegura@reedsmith.com*)
21 |                                          Michelle L. Cheng (SBN 239711)
                                             (*mcheng@reedsmith.com*)
22 |                                          REED SMITH LLP
                                             355 South Grand Avenue, Suite 2900
23 |                                          Los Angeles, CA  90071-1514
                                             Telephone:  213.457.8000
24 |                                          Facsimile:   213.457.8080

25 |                                          *Attorneys for Defendants Medtronic Inc.,
                                             Medtronic plc, Medtronic Sofamor Danek USA,*
26 |                                          *Inc., Warsaw Orthopedic, Inc., Medtronic
                                             Sofamor Danek Deggendorf GmbH, and*
27 |                                          *Medtronic Puerto Rico Operations Co.,
                                             Humacao*

28 |