| | |
|---|---|
| Michael K. Brown (SBN 104252)<br>Mildred Segura (SBN 210850)<br>REED SMITH LLP<br>355 South Grand Avenue, Suite 2900<br>Los Angeles, CA  90071-1514<br>mkbrown@reedsmith.com<br>msegura@reedsmith.com<br>mcheng@reedsmith.com<br>Telephone:  213.457.8000<br>Facsimile:   213.457.8080<br><br>Attorneys for Defendants Medtronic Inc., Medtronic Sofamor Danek USA, Inc., Warsaw Orthopedic Inc., and Medtronic Puerto Rico Operations Co., Humacao<br>*Additional counsel listed on signature page* | William Roberts (*admitted pro hac vice*)<br>ROPES & GRAY LLP<br>800 Boylston Street<br>Boston, MA 02199-3600<br>William.Roberts@ropesgray.com<br>Telephone:  617.951.7313<br>Facsimile:  617.951.7050 |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, et al., *ex rel.* The Dan Abrams Company LLC,<br><br>             Plaintiffs,<br><br>   vs.<br><br>Medtronic Inc., Medtronic Plc., Medtronic Sofamor Danek USA Inc., Warsaw Orthopedic Inc., Medtronic Sofamor Danek Deggendorf Gmbh and Medtronic Puerto Rico Operations Co., Humacao,<br><br>             Defendants. | No.: 2:15-cv-01212-JAK (ASx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS OF SIDNEY P. BLUM**<br><br>Date:          February 27, 2023<br>Time:          8:30 a.m.<br>Courtroom:  10B<br><br>[ASSIGNED TO HON. JOHN A. KRONSTADT]<br><br>Complaint Filed:  Feb. 19, 2015<br><br>*[Filed Concurrently with Defendants' Notice of Motion and Motion to Exclude Opinions of Sidney P. Blum; Declaration of William L. Roberts; and (Proposed) Order]* |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 3

ARGUMENT ............................................................................................................... 3

    I.    Mr. Blum's Opinions Are Unreliable and Unhelpful to the Trier of Fact Because They Are Not Based on Sufficient Facts or Data. ................................................................................................................ 3

    II.   Mr. Blum Lacks Experience and Expertise Relevant to His Primary Assumptions. ............................................................................. 7

CONCLUSION .......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Hospital Association v. Azar*,
   468 F.Supp.3d 372 (D.D.C. 2020) ................................................................................ 6

*Clear-View Techs., Inc. v. Rasnick*,
   13-CV-02744-BLF, 2015 WL 3505003 (N.D. Cal. June 2, 2015) ........................... 3

*Daubert v. Merrell Dow Pharms. Inc.*,
   509 U.S. 579 (1993) .................................................................................................. 3

*Lust ex rel. Lust v. Merrell Dow Pharms. Inc.*,
   89 F.3d 594 (9th Cir. 1996) ....................................................................................... 3

*Michaels v. Greenberg Traurig, LLP*,
   62 Cal. App. 5th 512 (2021) ...................................................................................... 4

*Murray v. S. Route Mar. SA*,
   870 F.3d 915 (9th Cir. 2017) ..................................................................................... 3

*Rutenberg v. Ortho-McNeil Janssen Pharms., Inc.*,
   No. CV 12-08344 DSF, 2017 WL 5634986 (C.D. Cal. Mar. 27, 2017) ................... 3

*Sport Dimension, Inc. v. Coleman Co., Inc.*,
   No. XV 14-00438 BRO, 2015 WL 12732710 (C.D. Cal. Jan. 29, 2015) ................................................................................................................. 7

*Synthes USA, LLC v Spinal Kinetics, Inc.*,
   No. C-09-01201, 2011 WL 11709387 (N.D. Cal. Aug. 19, 2011) ........................... 7

*U.S. v. Mallory*,
   988 F.3d 730 (4th Cir. 2021) ..................................................................................... 7

**Other Authorities**

Fed. R. Evid. 702 ........................................................................................... 3, 5, 7, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Medtronic Inc., Medtronic plc, Medtronic Sofamor Danek USA Inc., Warsaw Orthopedic, Inc., Medtronic Sofamor Danek Deggendorf GmbH, and Medtronic Puerto Rico Operations Co., Humacao ("Medtronic" or "Defendants") respectfully move to exclude the expert witness report served on October 28, 2022 (the "Report") and testimony of Sidney P. Blum ("Mr. Blum") in their entirety.

## INTRODUCTION

Mr. Blum's damages Report is based on data and assumptions that do not relate to or accurately reflect the applicable damages framework. As Mr. Blum acknowledges, any damages suffered by the government in this matter must be based on claims that hospitals submitted to government payors related to their use of Verte-Stack Cornerstone PSR and Verte-Stack Anatomic PEEK devices (the "Subject Devices"), and corresponding payments made to the hospitals by the government.

The Medtronic sales data that Mr. Blum relies upon for the damages calculations set forth in his Report reflect something entirely different—the revenue that Medtronic received from its hospital customers that purchased the Subject Devices. Medtronic is not involved in the process by which hospitals submit claims to the government related to their use of the Subject Devices, or the process by which the government makes corresponding payments to hospitals. Medtronic thus does not have any data or other information regarding the claims its hospital customers submit to the government.

Mr. Blum openly concedes that Medtronic's sales data "is not a reliable source for the percentage of the medical devices at issue in this litigation that were reimbursed to hospitals through Medicaid and Medicare." Roberts Decl., Ex. 1, Expert Report of Sidney P. Blum ("Report") at 31. Nevertheless, Mr. Blum bases his damages calculations *on the very Medtronic sales data he says is not reliable*. Mr. Blum's reliance on data that even he does not believe is reliable renders his opinions on damages unhelpful to a trier of fact.

Nor is there any other evidence in the record to support Mr. Blum's damages

– 1 –

calculations. Notably, although Mr. Blum believes that "the hospitals themselves or the Medicare and Medicaid" would be "a more reliable source" than Medtronic's data to determine which claims related to use of the Subject Devices were reimbursed by government payors, Roberts Decl., Ex. 1, Report at 30–31, neither Mr. Blum nor Relator made any effort to develop such evidence. In fact, after voluminous discovery in this matter, there is no evidence in the record of *any claims* submitted to government payors or the amounts the government paid on account of such claims.

Lacking any reliable facts or data on which to base his opinions, Mr. Blum tries to fill this gap by relying on the unsupported assumptions that there must have been some claims submitted to government payors related to use of the Subject Devices and that "the revenues received by Medtronic for the Subject Devices are equal to or less than the amounts the United States paid to the Hospitals for the purchase of the Subject Devices from Medtronic." Roberts Decl., Ex. 1, Report at 9. But Mr. Blum provides no authority, citation to the record, or any other basis for these assumptions. Mr. Blum bases his assumption about the amounts paid by the government to hospitals on his understanding, based on his experience, "that Hospitals will not pay Medtronic more for the Subject Devices than what the Hospitals received from the United States and likely may pay less to cover administrative costs." *Id.* However, by his own admission, Mr. Blum is not an expert in hospital billing and cost accounting, or with respect to how hospitals are reimbursed by government payors. *See, e.g.*, Roberts Decl., Ex. 7, Dep. Tr. of Sidney P. Blum ("Blum Dep. Tr.") at 152:9–152:10, 151:9. Although Mr. Blum may have significant experience in other areas, his admitted lack of specialized or technical knowledge relevant to his fundamental assumptions means he cannot rely on his experience to salvage the lack of available reliable data.

Without any grounding in either reliable facts or data in the record, or assumptions based on relevant experience, Mr. Blum's analysis is inherently unreliable and cannot be helpful to a trier of fact. This Court should therefore exclude Mr. Blum's Report and testimony in their entirety.

## LEGAL STANDARD

Expert testimony is admissible only if: (1) the expert's "knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d); *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589–95 (1993). The proponent of expert testimony bears the burden of establishing its admissibility. *Lust ex rel. Lust v. Merrell Dow Pharms. Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Trial courts "play an active and important role as gatekeepers examining the full picture of the experts' methodology and preventing shoddy expert testimony and junk science from reaching the jury." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017). "If the proposed testimony does not satisfy the requirements of Rule 702—because the expert is not qualified, his methodology or application thereof is unreliable, or his testimony will not assist the factfinder—the district court must exercise its gatekeeper function and exclude the testimony." *Rutenberg v. Ortho-McNeil Janssen Pharms., Inc.*, No. CV 12-08344 DSF (FFMx), 2017 WL 5634986, at *2 (C.D. Cal. Mar. 27, 2017).

## ARGUMENT

### I. Mr. Blum's Opinions Are Unreliable and Unhelpful to the Trier of Fact Because They Are Not Based on Sufficient Facts or Data.

Rule 702 requires that, among other things, expert testimony be helpful to "the trier of fact to understand the evidence or to determine a fact in issue," and be "based on sufficient facts or data." Fed. R. Evid. 702(a), (b); *Daubert*, 509 U.S. at 589. While the phrase "sufficient facts or data" is intended to be broad, the Court must still perform a gatekeeping function to ensure that the facts, data, and assumptions relied upon by an expert are sufficiently tied to the record so that the expert's testimony can be helpful to the trier of fact. *See Clear-View Techs., Inc. v. Rasnick*, 13-CV-02744-BLF, 2015 WL 3505003, at *2 (N.D. Cal. June 2, 2015) ("District courts across the country have

– 3 –

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS OF SIDNEY P. BLUM

repeatedly held that an economic expert may be excluded from testifying under *Daubert* when the expert's testimony rests on faulty assumptions." (internal quotations omitted).[1]

Because the facts and data relied upon by Mr. Blum, by his own admission, are unreliable, his opinions on damages based on those facts and data are inherently unreliable and could not be helpful to a trier of fact. In his Report, Mr. Blum expressly states that he has "been informed from counsel" that the Medtronic sales data on which his damages calculations are based "is not a reliable source for the percentage of the medical devices at issue in this litigation that were reimbursed to hospitals through Medicaid and Medicare." Roberts Decl., Ex. 1, Report at 31. Medtronic agrees. Deposition testimony from Medtronic employees and Medtronic's responses to written discovery both confirm that Medtronic is not involved in the reimbursement process and thus does not maintain data regarding claims submitted to government and other payors related to use of the Subject Devices, or any corresponding payments from payors. *See, e.g.*, Roberts Decl., Ex. 6, Deposition Transcript of Jay Wojtkiewicz, at 23:11–23:14 (Sept. 30, 2022); Roberts Decl., Ex. 4, Deposition Transcript of Renee Lutz Diaz, at 105:9–105:12 (Sept. 15, 2022); Roberts Decl., Ex. 5, Deposition Transcript of Michael Von Scherr, at 28:18–28:22 (Aug. 31, 2022); Roberts Decl., Ex. 3, Medtronic's Responses to Relator's Requests for Production, Set 4, Responses to Requests 29 & 39 (Sept. 15, 2022). And Mr. Blum himself agreed that hospitals receive reimbursement payments from government payors, not Medtronic. Roberts Decl., Ex. 7, Blum Dep. Tr. at 100:24–101:13. There is simply no evidence in the record to support the assertion that Medtronic's sales data is a reliable basis to determine that claims have been submitted to government payors related to use of the Subject Devices,

---

[1] Notably, Mr. Blum recently had expert testimony excluded on precisely these grounds. *See Michaels v. Greenberg Traurig, LLP*, 62 Cal. App. 5th 512, 525 (2021) (affirming exclusion of certain of Mr. Blum's testimony as "entirely too speculative and based upon assumptions that are not supported by the record").

– 4 –

or that the amounts paid on account of such claims have any relationship to the amounts hospitals paid to Medtronic for the devices. Mr. Blum's opinions, however, rely *entirely* on the very Medtronic data that he and counsel for Relator consider unreliable. *See* Roberts Decl., Ex. 1, Report at 10–18, 37–43, 48–51. This is insufficient under Rule 702.

Moreover, Mr. Blum knowingly relied on this unreliable data despite having identified more appropriate sources of data. As Mr. Blum states in his Report, and confirmed at his deposition, records from hospitals that performed procedures and sought reimbursement from government payors, as well as records from the government payors themselves, would have been more reliable sources of data regarding claims submitted to and paid by government payors. Roberts Decl., Ex. 1, Report at 30–31; Roberts Decl., Ex. 7, Blum Dep. Tr. at 144:16–145:22 ("[I]f hospitals are doing the surgery, hopefully they have better records of what they've been reimbursed for and what they've paid for. I think the US Government should have the best records of what they paid for."). But Mr. Blum and Relator nevertheless failed to seek such data from hospitals or government payors.

Instead, Mr. Blum attempts to remediate the lack of evidence in the record of claims submitted to or paid by government payors by relying on assumptions that purport to connect Medtronic's sales data to claims submitted to government payors:

> I assume the revenues received by Medtronic for the Subject Devices are equal to or less than the amounts the United States paid to the Hospitals for the purchase of the Subject Devices from Medtronic. This assumption is based on the understanding that Hospitals will not pay Medtronic more for the Subject Devices than what the Hospitals received from the United States and likely may pay less to cover administrative costs.

Roberts Decl., Ex. 1, Report at 9. Other assumptions Mr. Blum makes in his Report are along these same lines. *See, e.g.*, Roberts Decl., Ex. 1, Report at 10–11, 28–33. But

Mr. Blum provides no basis for these fundamental assumptions. Nor could he, as there is no evidence in the record to support such assumptions.

Although the basic assumption that businesses tend to ensure that revenues exceed costs might be suitable in some contexts, here, this assumption fundamentally misunderstands the complex nature of Medicare and Medicaid reimbursement. And while there is no evidence in the record to support this assumption, there is ample record evidence that flatly rejects it. For instance, multiple sources in the record establish that Medicare and Medicaid pay hospitals reimbursement rates that are less than the cost of delivering care. *See, e.g.*, Roberts Decl., Ex. 7, Blum Dep. Tr. at 115:18–116:23; Roberts Decl., Ex. 2, Expert Report of Jeffry Kopa ("Kopa Report") at 10–11. Mr. Blum provides no evidence to the contrary.

Further, Medtronic's sales data reflects that the sales prices for the Subject Devices vary by customer and by date. Roberts Decl., Ex. 2, Kopa Report at 11. This fact, which Mr. Blum does not account for, combined with Mr. Blum's unfounded assumption, would mean that Medicare and Medicaid reimbursement rates vary among hospitals based on how much each hospital agreed to pay for a specific device. But there is nothing in the record to support the suggestion that the reimbursement rates depend on hospitals' individual costs. And Mr. Blum has no understanding of whether hospitals even report the costs of the devices to government payors. Roberts Decl., Ex. 7, Blum Dep. Tr. at 107:17–21. In fact, contrary to Mr. Blum's assumption, Medicare has a flat-fee reimbursement system that has been acknowledged to be "essential" to the program's operation. *See American Hospital Association v. Azar*, 468 F.Supp.3d 372, 383–84 (D.D.C. 2020).

As Mr. Blum acknowledges the insufficiency of the Medtronic sales data he relies upon, and there is no basis in the record for the assumptions Mr. Blum makes to salvage the insufficient data, his opinions cannot be helpful to a trier of fact and should be excluded.

## II. Mr. Blum Lacks Experience and Expertise Relevant to His Primary Assumptions.

Lacking any basis in the record as foundation for his assumptions regarding Medtronic's sales data, Mr. Blum attempts to support them by relying on his experience. Mr. Blum testified that he based the key assumptions in his Report on his expertise and experience as an auditor and with respect to economic damages. *See, e.g.*, Roberts Decl., Ex. 7, Blum Dep. Tr. at 58:23–25. While Mr. Blum may have considerable experience in a number of areas, he plainly lacks sufficient specialized or technical knowledge to support the unfounded assumptions that are crucial to his opinions in this matter.

It is a basic proposition that an expert witness must be an expert in the area for which he offers testimony. *See, e.g.*, *Sport Dimension, Inc. v. Coleman Co., Inc.*, No. XV 14-00438 BRO (MRWx), 2015 WL 12732710, at *7 (C.D. Cal. Jan. 29, 2015). Although an experienced professional may have substantial credentials as to broader or more general topics, that does not mean the expert is sufficiently qualified to offer more specialized opinions. *See Synthes USA, LLC v Spinal Kinetics, Inc.*, No. C-09-01201, 2011 WL 11709387, at *6 (N.D. Cal. Aug. 19, 2011) (excluding the testimony of a patent law expert with forty years of experience as a practitioner from testifying on technical matters as he had no expertise relevant to the narrower pertinent art of spinal implants). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Adv. Comm. Notes.

The economics of hospitals and healthcare reimbursement are incredibly complex and require technical and specialized knowledge to understand. *See U.S. v. Mallory*, 988 F.3d 730, 741–42 (4th Cir. 2021), *cert. denied sub nom. Dent v. U.S.*, 211 L. Ed. 2d 294 (Nov. 15, 2021) (affirming the exclusion of expert testimony from a nurse who "sought to testify as to Medicare's reimbursement code calculations, but [ ]lacked

personal knowledge about Medicare's precise methodology").  Although Mr. Blum asserts his expertise with respect to auditing and economic damages, he readily and repeatedly concedes that he is not an expert in matters related to the primary assumptions in his Report, such as hospital billing and cost accounting, or how hospitals are reimbursed by government payors.  *See* Roberts Decl., Ex. 7, Blum Dep. Tr. at 152:9–14 ("I'm not an expert on how the reimbursements work. . . .  I can't tell you, for example, if the reimbursement is based upon where a person lives or where the hospital location is.  Then I start getting into areas where I'm not an expert."); *id.* at 99:6–9 ("I'm not an expert in that area," in reference to sources of reimbursement for the Subject Devices); *id.* at 99:16–99:25 ("I'm not an expert in the area," in reference to which entities receive reimbursements from the government); *id.* at 105:18–106:5 ("Again, I'm not an expert in this area," in reference to reimbursements on the basis of procedures); *id.* at 106:6–106:11 ("again, I'm not an expert," in reference to whether hospitals submit claims for reimbursement to government payors specifically for the Subject Devices); *id.* at 151:9 (stating he is "not an expert" on how hospital billing works); *id.* at 117:9–19 (stating that he has no experience related to hospital cost accounting); *see also id.* at 33:14–20 ("I'm not an expert on those organizations," in reference to the Centers for Medicare and Medicaid Services); *id.* at 66:2–3 ("Again, I'm not a Medicare Advantage expert."); *id.* at 71:3–4 ("I've not been retained as a VA hospital expert."); *id*. at 121:15 ("I'm not an expert on spinal fusions."); *id.* at 86:7–86:8 ("I'm not an expert on medical devices").  His lack of technical and specialized knowledge in these areas to support his assumptions falls short of the requirements of Rule 702.

      Mr. Blum's lack of technical and specialized knowledge in these areas comes through in the many mistakes he makes when attempting to calculate damages based on his faulty assumptions and unreliable data, which include the following:

- Mr. Blum's analysis fails to account for the fact that Medicare and Medicaid do not reimburse hospitals for the devices implanted in a procedure; instead,

hospitals receive a pre-determined rate for bundled services provided during a procedure. *See* Roberts Decl., Ex. 7, Blum Dep. Tr. at 105:8–106:16. Mr. Blum made no effort to determine how much of this bundled payment correlates to the device used in the procedure and failed to undertake any analysis as to how the reimbursements from government payors compare to the revenue Medtronic received for the devices. *Id*. at 106:17–108:18.

- Mr. Blum did not realize that the Subject Devices were three-part constructs with a center strut and two end caps forming one device. *Id*. at 159:7–160:18. Instead, Mr. Blum assumed in his report that each sale of each component part of the device would cause a separate claim to be submitted to an insurer. Roberts Decl., Ex. 1, Report at 48. At his deposition, Mr. Blum learned how the Subject Devices are constructed, and acknowledged this mistake. Roberts Decl., Ex. 7, Blum Dep. Tr. at 165:14–25.

- Mr. Blum assumes that every sale by Medtronic results in the use of a device, ignoring expiration, obsolescence, and mistaken use. But Mr. Blum admitted that he "was not aware of any expiration date" for the Subject Devices and never considered expiration, waste, or obsolescence in his analysis. *Id*. at 131:10–133:2.

- Mr. Blum uses procedures in a clinical classification called "spinal fusion"[2] in an attempt to estimate the number of cervical corpectomy procedures performed with the Subject Devices had Medicare or Medicaid as an "expected payor." Roberts Decl., Ex. 1, Report at 29–31. But Mr. Blum did no analysis as to what procedures were listed in this category or as to whether spinal fusions in general are an appropriate benchmark for cervical corpectomy procedures. *See* Roberts Decl., Ex. 7, Blum Dep. Tr. at 119:5–125:6; Roberts Decl., Ex. 2, Kopa Report

---

[2] The data Mr. Blum uses in this regard comes from the Healthcare Cost and Utilization Project ("HCUP"). Mr. Blum has never used this data for purposes of analyzing the share of procedures covered by Medicare and Medicaid. Report at 29-30.

at 14–15.  When asked what procedures the clinical classification "spinal fusion" includes, Mr. Blum testified that his "understanding is limited to the words spinal and fusion."  Roberts Decl., Ex. 7, Blum Dep. Tr. 119:18–23.

- In evaluating the HCUP data, Mr. Blum failed to consider any differences between patients covered by traditional Medicare and Medicaid and patients covered by privately operated Medicare Advantage and Medicaid Managed Care plans.  *Id*. at 141:2–15; Roberts Decl., Ex. 2, Kopa Report at 15–16.  Indeed, Mr. Blum testified that such considerations were "beyond the scope of what [he] was retained for and prepared to talk about."  Roberts Decl., Ex. 7, Blum Dep. Tr. at 65:9–70:20.

- Mr. Blum assumes, without any basis or explanation, that every device sold to VA Hospitals resulted in a government reimbursement.  Roberts Decl., Ex. 1, Report at 11–12.  But Mr. Blum did not know, and thus failed to consider that private insurance covers many procedures performed at these hospitals.  *See* Roberts Decl., Ex. 7, Blum Dep. Tr. at 71:1–77:16; Roberts Decl., Ex. 2, Kopa Report at 8, 17–18.

The above shortcomings in Mr. Blum's opinions are illustrative of Mr. Blum's failure to conduct reliable analysis based on unreliable data and unfounded assumptions and further highlight why this Court should exclude Mr. Blum's testimony.

## CONCLUSION

For the reasons stated above, Defendants respectfully move the Court to exclude the testimony of Mr. Blum.

DATED: December 16, 2022     By: /s/ *William L. Roberts*
William L. Roberts *(admitted Pro Hac Vice)*
(*William.Roberts@ropesgray.com*)
James Dowden *(admitted Pro Hac Vice)*
(*James.Dowden@ropesgray.com*)
Ezra D. Geggel *(admitted Pro Hac Vice)*

(*Ezra.Geggel@ropesgray.com*)
ROPES & GRAY LLP
800 Boylston Street, Prudential Tower
Boston, MA 02199-3600
Telephone: 617.951.7000
Facsimile: 617.951.7050

Douglas H. Hallward-Driemeier (*admitted Pro Hac Vice*)
(*Douglas.Hallward-Driemeier@ropesgray.com*)
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
Telephone:  202.508.4600
Facsimile:  202.508.4650

Laura G. Hoey *(admitted Pro Hac Vice)*
(*Laura.Hoey@ropesgray.com*)
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Telephone: 312.845.1318
Facsimile: 312.845.5562

Michael K. Brown (SBN 104252)
(*mkbrown@reedsmith.com*)
Mildred Segura (SBN 210850)
(*msegura@reedsmith.com*)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone: 213.457.8000
Facsimile: 213.457.8080

Joseph T. Dixon, III *(admitted Pro Hac Vice)*
(*Jdixon@fredlaw.com*)
Amanda M. Mills *(admitted Pro Hac Vice)*
Fredrikson and Byron PA
200 South 6th Street, Suite 4000

– 11 –

Case 2:15-cv-01212-JAK-AS   Document 201   Filed 12/16/22   Page 15 of 17   Page ID #:12740

Minneapolis, MN 55402
Telephone: 612.492.7000
Facsimile: 612.492.7077

*Attorneys for Defendants Medtronic Inc., Medtronic Sofamor Danek USA, Inc., Warsaw Orthopedic, Inc., and Medtronic Puerto Rico Operations Co., Humacao*

– 12 –

DEFENDANTS' MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS OF SIDNEY P. BLUM

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Medtronic, certifies that this brief contains 3,415 words, which complies with the word limit of Local Rule 11-6.1.

DATED: December 16, 2022

                               */s/ William L. Roberts*
                               William L. Roberts (*admitted pro hac vice*)

# CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on December 16, 2022.

>  /s/ William L. Roberts
>  William L. Roberts (*admitted pro hac vice*)